United States District Court
Southern District of Texas
**ENTERED**
November 12, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHNNY GUERRA, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-122 |
| | § | |
| WILLIAMS STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Johnny Guerra is an inmate in the Texas Department of Criminal Justice - Criminal Institutions Division ("TDCJ-CID") and currently is incarcerated at the Terrel Unit in Rosharon, Texas. The actions about which he complains occurred in Nueces County, Texas. Petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on March 5, 2015.[1] The underlying conviction which is the subject of the petition is a 2012 Nueces County conviction for theft. Petitioner claims that his constitutional rights were violated during the trial. Respondent filed a motion for summary judgment on September 18, 2015 (D.E. 17) to which Petitioner did not respond. For the reasons set forth below, it is recommended that Respondent's Motion for Summary Judgment be granted and Petitioner's Application for Habeas Corpus Relief be denied. It is further recommended that any request for a Certificate of Appealability be denied.

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on March 5, 2015 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331.  Petitioner was convicted in Nueces County, Texas.  28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

On November 4, 2011 Petitioner was indicted for theft of property worth less than $1,500 for an incident which occurred on May 11, 2011.  The theft was a state jail felony enhanced to a second degree felony because of Petitioner's prior convictions for theft and burglary (I CR 3-5; D.E. 12-20, pp. 7-9).  Petitioner was tried in front of a jury in the 347th District Court of Nueces County, Texas and the jury found him guilty on March 14, 2012. (I CR 111-112; D.E. 12-21, pp. 41-42).

At the trial, a man who worked as a clerk at a convenience store testified that he had first seen Petitioner in the store on May 10, 2011 (III RR 47; D.E. 12-15, p. 47).  Petitioner had gone to the magazine rack and then to the restroom.  When Petitioner came out of the restroom, he went back to the magazine rack.  Another man, identified as Richard Barrientes, talked to the clerk and then entered the restroom.  After Barrientes came out of the restroom, both men left (III RR 25; D.E. 12-15, p. 25).  Later that day when the clerk went to clean the restroom, he found three or four cardboard dividers that were used to obscure the covers of adult magazines from the view of children and others who might find them offensive (III RR 33-34; D.E. 12-15, pp. 33-34).

Petitioner and Barrientes returned to the store the next day.  The clerk noted that Petitioner went to the magazine rack, to the restroom and back to the magazine rack.

Barrientes asked the clerk if he could store a piece of luggage at the counter and asked to buy a cigar. The clerk became suspicious and started walking to the back of the store (III RR 35; D.E. 12-15, p. 35). Barrientes passed by the clerk and the clerk noticed something that looked like a notebook sticking out from under Barrientes's shirt. The clerk placed his hand on Barrientes's shoulder and asked him to stop and show the clerk what was under his shirt. Barrientes spun around, said, "It's mine" and went out the door. The clerk told another employee to call the police. Petitioner also went out through the door and left on a bicycle (III RR 36; D.E. 12-15, p. 36). The clerk watched both men go behind a restaurant located next to the convenience store (III RR 52; D.E. 12-15, p. 52).

The clerk found more of the cardboard dividers on the floor inside and outside the restroom. A short while later the police brought both men back to the store and the clerk identified them as the men he suspected of stealing the magazines (III RR 40-41, 71; D.E. 12-15, pp. 40-41, D.E. 12-6, p. 1). The police also returned magazines in a plastic bag to the store (III RR 56-57, 116, 119; D.E. 12-15, pp. 56-57, D.E. 12-16, pp. 46, 49).

A police officer testified that he was working on May 11, 2011 and received a call from dispatch that two people had left the convenience store without paying for their property. He had a physical description of the men and one of them was said to be riding a bicycle (III RR 61-62; D.E. 12-15, pp. 61-62). The officer spotted Petitioner in the parking lot of a bar close to the convenience store, riding a bicycle and carrying a plastic bag (III RR 64-65; D.E. 12-15, pp. 64-65). The officer made a U-turn and next saw the bicycle leaning up against the side of a building next to the bar and Petitioner walking from behind the building, towards the bar (III RR 65-66; D.E. 12-15, pp. 65-66).

Petitioner was empty-handed (III RR 67-68; D.E. 12-15, pp. 67-68). A second officer arrived and searched behind the building where he found a black plastic bag containing six wrapped packages consisting of two adult magazines each (III RR 68, 71, 115-116; D.E. 12-15, p. 16 and D.E. 12-16, pp. 1, 45-46).

A woman who worked as a bartender at the bar where Petitioner's bicycle was found testified that prior to being arrested Petitioner had gone into the bar and offered to sell adult magazines and a bicycle for twenty dollars (III RR 86-87; D.E. 12-16, pp. 16-17). He had gone into the bar the previous day offering to sell cigarettes and adult magazines (III RR 88; D.E. 12-16, p. 18).

Barrientes testified that he had pleaded guilty to charges stemming from the theft and that he had stolen the magazines with the intention of selling them for beer money (III RR 124-126; D.E. 12-16, pp. 54-56). Barrientes initially was sentenced to a term of probation for the theft but violated the terms of his probation and was incarcerated (III RR 125; D.E. 12-16, pp. 55).

Barrientes further testified that Petitioner went into the store to buy beer and left the store before Barrientes did (III RR 126; D.E. 12-16, p. 56). Barrientes also said that after he stole the magazines, he dropped them into a trashcan behind the restaurant next to the convenience store. He did not know how Petitioner came to have the magazines in his possession, but said Petitioner did not steal the magazines (III RR 130-131; D.E. 12-16, pp. 60-61).

The jury found Petitioner guilty and sentenced him to a sixteen-year term of incarceration in TDCJ-CID (I CR 111-112; D.E. 12-21, pp. 40-41). Petitioner filed a

direct appeal and the Thirteenth Court of Appeals affirmed his conviction on March 28, 2013.  *Guerra v. State*, No. 13-12-00208-CR, 2013 WL 1281986 (Tex. App. –Corpus Christi 2013, pet. ref'd)(located herein at D.E. 12-6).  Petitioner sought a petition for discretionary review and it was refused on August 21, 2013.  *Guerra v. State*, No. PD-0544-13 (Tex. Crim. App. 2013)(located herein at D.E. 12-5).

Petitioner filed an application for habeas corpus review in state court on December 4, 2013.  *Ex Parte Guerra*, WR-80,843-01 at 2-35 (D.E. 12-27 at 7-40).  The State filed an answer and on January 6, 2014 the trial court recommended dismissal of the application as non-compliant because Petitioner had changed the form application, omitted pages of the form, and failed to specify his grounds for relief in summary fashion.  *Id.* at 78 (D.E. 12-28 at 33).  The Texas Court of Criminal Appeals denied Petitioner's application without written order on March 5, 2014.  *Id.* at "Action Taken" page (D.E. 12-25).

Petitioner filed this federal petition on March 5, 2015 and argues that he received ineffective assistance of counsel when his attorney failed to (1) seek rulings on pre-trial discovery motions to obtain the store's surveillance video; (2) suppress the statement Petitioner gave without having been read his Miranda rights; and (3) limit evidence of Petitioner's prior membership in a gang.  In addition, Petitioner argues that there was insufficient evidence to support the conviction.

In his motion for summary judgment, Respondent argues that Petitioner has failed to show that he is entitled to relief under the standard set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA) and that his claims of ineffective assistance of

counsel are conclusory and without merit. Respondent concedes that Petitioner has exhausted the claims and that the petition is timely and not barred as second or successive.

## APPLICABLE LAW

**A. Standard of Review**

Under the AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000). Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely

"incorrect" or "erroneous" application of federal law.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001)(citing *Williams*, 120 S.Ct. at 1522-1523).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  A federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision.  Then it must ask whether it is possible that fair-minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *Harrington*, 131 S.Ct. at 786.  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.  *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet.  "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court litigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther."  *Id.*  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-787.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court

decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S.Ct. at 784.

**B. Ineffective Assistance of Trial Counsel**

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.*, 466 U.S. at 687-88, 104 S.Ct. at 2064. Petitioner must show "significant prejudice" in a noncapital context. *Armstead v. Scott*, 37 F.3d 202 (5th Cir. 1994)(citing *Spriggs v. Collins*, 993 F.2d 85, 88, n. 4 (5th Cir. 1993)).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A petitioner must identify the acts or omissions of

counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.*, 466 U.S. at 690.

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-690, 104 S.Ct. 2052. . . . Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

*Harrington*, 131 S.Ct. at 788. In addition, federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). "When § 2254 (d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### (1) Failure Seek Rulings on Pre-trial Discovery Motions

Petitioner asserts that his attorney provided ineffective assistance when he failed to seek rulings on pre-trial discovery motions, including a motion to obtain the store's surveillance video. The last reasoned state court decision to address this issue was the opinion of the Thirteenth Court of Appeals when it affirmed Petitioner's conviction. The court found that the record was undeveloped regarding Petitioner's counsel's reasons for

not pursuing pre-trial motions identified by Petitioner on appeal. In the absence of evidence, the court concluded that counsel had plausible reasons for not pursuing rulings on the motions. *Guerra*, 2013 WL 1281986 at *5 (D.E. 12-6 at p. 10)(citing *Robertson v. State*, 852 S.W.2d 508, 510-11 (Tex. Crim. App. 1993)).

It is not clear from the record whether a video tape actually existed. Although the clerk testified that the store had a surveillance camera, the police did not obtain a copy of any tape (IV RR 14-15; D.E. 12-17 at p. 5). Nor does the record indicate that the prosecution had a videotape of the incident or that Petitioner's attorney could have obtained one from the convenience store.

In addition, even if a videotape existed and even if Petitioner's attorney were remiss in not asking for a copy of the tape, Petitioner cannot show that he was prejudiced by the absence of the videotape. Petitioner does not describe what he believes the video would have shown, but it is assumed that he believes the video would have shown Barrientes, rather than Petitioner, stealing the magazines. The jurors were instructed that under the law of parties, if they found that Barrientes intended to steal the magazines and Petitioner knew of Barrientes's intent, and if they further found that Petitioner acted with intent to promote or assist the commission of the offense by Barrientes and encouraged, directed, aided or attempted to aid Barrientes, Petitioner should be found guilty (I CR 91-92; D.E. 12-21 at pp. 21-22). Pursuant to those instructions, the jury could have found that Petitioner was acting as a lookout for Barrientes or that he otherwise helped or attempted to help Barrientes to steal the magazines. Even if jurors concluded that

Petitioner did not himself remove magazines from the store, they had sufficient evidence to find him guilty under the law of parties.

Petitioner has not shown that the conclusion of the state court on this issue is contrary to Supreme Court Precedent under the AEDPA standard. Accordingly, summary judgment should be entered for Respondent on this issue.

**(2) Failure to Suppress Petitioner's Statement**

Petitioner contends that his attorney provided ineffective assistance of counsel when he failed to follow up on a motion to suppress Petitioner's statement to police even though the police did not advise him of his *Miranda*[2] rights. As it did with Petitioner's argument regarding the videotape, the state habeas court found that the record was undeveloped regarding Petitioner's counsel's reasons for not pursuing the motion to suppress and in the absence of evidence, the court concluded that counsel had plausible reasons for not pursuing rulings on the motions. *Guerra*, 2013 WL 1281986 at *4 (D.E. 12-6 at p. 10).

A review of the record shows that no written statement by Petitioner was entered into evidence and the only mention of a statement by Petitioner was testimony by one of the officers that Petitioner told him Barrientes stole the magazines (III RR 70; D.E. 12-15, p. 70). Petitioner has not shown that failure to exclude that statement was prejudicial to him and has not otherwise shown that the state court conclusion is contrary to Supreme Court precedent under the AEDPA standard. Thus, it is recommended that summary judgment be entered for Respondent on this issue.

---

[2] *See Miranda v. Arizona*, 348 U.S. 436 (1966).

### (3) Failure to Prevent Mention of Petitioner's Prior Gang Membership

Petitioner argues that his attorney was ineffective for failing to seek a ruling on the motion in limine he filed to prevent the jury from hearing that Petitioner had been a member of a gang. No mention of Petitioner's gang affiliation was made during the guilt/innocence phase of the trial. However, during the punishment phase, a police officer who worked in the gang unit testified that Petitioner had tattoos indicating he was a member of the Mexican Mafia (V RR 11-18; D.E. 12-18, pp. 6-8). Generally, testimony regarding a defendant's affiliation with a gang may be relevant and admissible at the punishment phase of a trial to show the defendant's character. *Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995). In addition, even if a defendant is no longer affiliated with a gang at the time he commits a later offense, evidence of prior gang membership is relevant and admissible because it relates to his character. *Ho v. State*, 171 S.W.3d 295, 305 (Tex. App. –Houston [14th Dist.] 2005, pet. ref'd).

Petitioner has not described a basis on which the testimony could have been excluded. Because evidence of gang affiliation is admissible during the punishment phase of a trial, Petitioner cannot show that his attorney was ineffective for failing to move to have the testimony excluded. Accordingly, it is recommended that summary judgment be entered for Respondent on this issue.

### C. Insufficient Evidence

Petitioner asserts that the evidence was insufficient to find him guilty of theft because Barrientes testified that Petitioner was not involved in the theft and because the store clerk's testimony did not suggest that Petitioner acted with intent to assist Barrientes

with the theft.  When reviewing an application for habeas corpus relief based on a claim of insufficient evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The Thirteenth Court of Appeals addressed this issue when it affirmed Petitioner's conviction.  The court cited the evidence that Petitioner accompanied Barrientes to the store on both the day of the theft and the day before the theft and on both days Petitioner was seen standing close to the magazine rack and then going to the restroom.  The store clerk discovered discarded cardboard dividers used to cover the magazines and testified that the magazines would be easier to take and conceal without the covers.  The clerk also testified that Petitioner left the store immediately after Guerra left and rode on his bicycle in the same direction Guerra ran.  *Guerra v. State*, 2013 WL 1281986 at *3 (D.E. 12-6 at 7).

The court also cited testimony of the police officers that Petitioner was seen riding a bicycle near the bar carrying a black plastic bag and that the bag was found behind the bar shortly after Petitioner walked out from the same area.  Finally, the court cited the testimony of the bartender that both on the day of the theft and the day before the theft, Petitioner had offered to sell adult magazines to the people in the bar.  The court concluded that the evidence was sufficient for the jury to infer that Petitioner was working with Barrientes to steal the magazines.  *Id.* at *4 (D.E. 12-6 at 8).

Petitioner has not shown that the determination that the conviction was supported by substantial evidence is contrary to Supreme Court precedent. Accordingly, it is recommended that judgment be entered for Respondent.

## D. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.")

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed or denied on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

In Petitioner's case, it is recommended that his claims be denied on the merits. Reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. If the district court orders that Petitioner's habeas petition be denied and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 17) be GRANTED and Petitioner's application for habeas corpus relief be DENIED. It is further recommended that a Certificate of Appealability be DENIED.

Respectfully submitted this 12th day of November, 2015.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).